## Case No. 14,051.

### TILLOTSON v. MUNSON.

[5 Biss. 426; Merw. Pat. Inv. 138.] [1]

Circuit Court, N. D. Illinois.   Oct., 1873.

PATENTS—NOVELTY—FILTER WELL.

A claim "in its application as a buried water reservoir in the bottom of a well, a filter, consisting of a perforated cylinder or cylinders, the central space forming a chamber into which the water is filtered, and from which the water supply is drawn," is not for a new subject matter, because the idea of burying any kind of filter is shown in Mr. Bartlett's patent, and the same kind of filter shown in complainant's patent was previously shown in the Andries patent, and the idea of admitting no air to the interior of the filter, and thereby securing the atmospheric pressure to force the water through the soil into the filter was shown in the drive wells of prior date.

[This was a bill in equity by Eliphalet N. Tillotson against Mad. C. Munson.]

L. L. Coburn, for complainant.
West & Bond, for defendant.

BLODGETT, District Judge.   The bill in this case alleges that on the 3rd day of April, 1866, letters-patent were issued from the patent office of the United States to R. H. Dewey and E. N. Tillotson, for an improved filter well; that on the 25th day of October, 1870, said letters-patent were surrendered and re-issued [No. 4,165] to said E. N. Tillotson and W. E. Tillotson. In the specifications appended to the re-issued patent the patentees say their invention "consists in inserting within the bottom of the well a cylindrical receiver or vessel, closed at both of its ends, and with its sides perforated with a series of small apertures, for forming communication between the inside and outside, so that the water surrounding such vessel, or contained in the stratum of earth in which it may be placed, can freely pass into the same, while at the same time the entrance of sand, etc., and other debris is entirely prevented, the inside of such vessel or receiver being divided into two or more separate compartments by concentric perforated partition plates, in the outer one of which chambers may be placed charcoal, or other filtering substances, for cleansing the water from all impurities, a pipe being connected with the inner chamber, having upon its upper end, above or near the surface of the ground, a suitable lifting pump for raising the water contained in the same." * * * Within the outer chamber they placed coarse sand, in the intermediate one charcoal or other suitable filtering substance or substances, so that as the water passes from the well, or ground, into the inner chamber of the receiver to the pump-pipe it would be cleansed of all impurities. After placing the filter thus constructed in the bottom of the well, the

well could be filled up, if desired, so that the filter would be entirely buried, the pipe forming the only communication by which the water could be withdrawn.

The claim is as follows: "In its application as a buried water reservoir, in the bottom of a well, the filter, consisting of a perforated cylinder or cylinders, the central space forming a chamber into which the water is filtered, and from which the water supply is drawn by an ordinary elevating device as described." The bill then alleges an infringement of this patent by the defendant and prays an injunction and damages. The answer denies that Tillotson and Dewey were the original and first inventors of the device described in the original and re-issued letters-patent, and insists that substantially the same thing had been patented and described in letters-patent issued by the government of Belgium to Edward Andries, dated February 9th, 1864, and by letters-patent of the United States, issued to said Edward Andries, dated March 28th, 1865; by letters-patent of the United States to J. H. Brunt, dated November 28th, 1865; letters-patent of the United States to J. C. & M. V. Campbell, dated January 9th, 1866; letters-patent of the United States to W. D. Bartlett, dated February 19th, 1856. The answer also denies that the wells made by defendant infringe upon the patent of the complainants. Proof has been taken upon both the issues tendered by the answer, and the case was ably argued upon these questions at the hearing.

Upon the question of novelty, the proof shows that on the 19th day of February, 1856, a patent was issued by the United States to W. D. Bartlett, for an improved cistern for wells, the leading feature of which was the construction of a reservoir at the bottom of a well, into which the water could pass and from which it was to be drawn by a pump. Provision was also made for surrounding this reservoir with filtering material through which the water must pass before it entered the reservoir. This reservoir was to be buried or covered up, so that the only communication was by the pump-pipe and an air-pipe, the inventor supposing an air-pipe communicating with the atmosphere necessary to make the pump operative. Here we had, in 1856, the idea of a buried reservoir or receiver, which was also to be made, to a greater or less extent, as the circumstances might require, a filter to purify the water; probably not as perfect a filter as the complainant's, but still a filter surrounding the reservoir from which the water was to be drawn.

By the patents issued to Edward Andries, first by the Belgium government, on the 9th of February, 1864, and secondly in this country on the 28th of March, 1865, a filter is described constructed in all its essential features exactly like complainant's filter; that is to say, with concentric casings of

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.  Merw. Pat. Inv. 138, contains only a partial report.]

perforated metal around a water chamber and the spaces between those casings filled with gravel, charcoal and other filtering material. It is true that in their re-issued patent complainants are not obliged to have more than one space for filtering material, but in their original patent they require more than one, so that I cannot deem the re-issued patent any less obnoxious to the charge of want of novelty by reason of their dispensing with one or more spaces for filtering material, the important characteristic being the casing of perforated metal surrounding a water chamber, and outside of that one or more concentric casings and the space or spaces filled with filtering material. Andries does not suggest the covering up or burial of his filter at the bottom of the well, but Tillotson does not require them to be so treated in order to be used. He simply says that it may be covered up "if desired." Andries intended his device to be used mainly for the purpose of filtering the water in open wells, rivers, the holds of ships, swamps, etc. All Dewey and Tillotson have done, is to take an Andries filter and bury it in the bottom of the well, or permit you to bury it "if desired." Bartlett had conceived the idea of burying a filter in the bottom of the well long before the Andries or Dewey & Tillotson patent, and had placed a full description of his device upon the records of the patent office. After him no one could patent the idea of burying a reservoir in the water stratum. If complainants or Dewey & Tillotson had invented a new filter to be used as a buried reservoir or filter, they might have had a patent on the new kind of filter, but not on the idea of burying it, for Bartlett had anticipated them on that point.

But it has been strenuously urged by the counsel for the complainants that their buried filter performs a new and different function from that of the Bartlett, because, being buried in the water-bearing stratum, and external air excluded, the atmospheric pressure bearing upon the water in the earth is utilized, and the moment a vacuum is created in the water-chamber by withdrawing the water through the pump, the atmospheric pressure drives the water through the filter into the water chamber, while in an open well it would only pass in by the slower process of filtration, or by the pressure of gravitation. And the evidence, by experiments performed in the presence of the court at the hearing, satisfies us that the atmospheric pressure does perform the function claimed in the operation of complainant's well when it is covered or buried. But this is not a feature peculiar to complainant's well. All the "drive wells," as they are called,—that is, wells made by forcing a pipe into the earth till the water-bearing stratum is reached, and then drawing the water into the pipe through perforations at or near its lower end,—operate upon precisely the same principle as complainant's well, so far as atmospheric pressure is concerned. The idea of a buried reservoir and filter is Bartlett's; the filter complainants use was invented by Andries; while the simple straight pipe driven into the earth to where water is found utilizes atmospheric pressure to the same extent and upon the same principle as the complainant's buried well. Indeed the aid of atmospheric pressure is invoked by the Andries filter when used in an open well surrounded by water. The moment the action of the pump exhausts the water from the water chamber, the pressure of the atmosphere helps to drive the surrounding water through the filter into the chamber to fill the vacuum. So that I think we may say properly in the light of the evidence there is nothing new in complainant's device.

This view of the case, upon the question of novelty, makes it unnecessary for us to consider the evidence applicable to the issue of infringement.

The bill will therefore be dismissed.